# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-01858-SCT

*CRYSTAL ACKER a/k/a CRYSTAL HAYDEN ACKER a/k/a "SHORTY"*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/05/1999 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | ITAWAMBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | AMY STOKES HARRIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 6/21/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/12/2001 |

### BEFORE PITTMAN, C.J., MILLS AND WALLER, JJ.

### PITTMAN, CHIEF JUSTICE, FOR THE COURT:

¶1. This is an appeal from an order entered by the Circuit Court of Itawamba County denying Crystal Acker's motion for resentencing or reduction of sentence. The State filed a motion to dismiss the appeal, alleging that Miss. Code Ann. § 99-35-101 does not authorize an appeal where the defendant has pled guilty. We deny the State's motion to dismiss,[1] but we affirm the order denying Acker's motion.

### FACTS AND PROCEEDINGS BELOW

¶2. Crystal Acker was indicted by the Itawamba County Grand Jury on a charge of uttering a forgery. Four months later, with court-appointed counsel, she made her appearance in the Circuit Court of Itawamba County. After thorough questioning by the trial judge to ensure that Acker understood the ramifications of a guilty plea, Acker entered her plea of guilty. Regarding her sentence, the State recommended that Acker take part in the Regimented Inmate Discipline (RID) Program, and upon finishing the program, be sent to a restitution center.

¶3. The trial judge asked Acker's counsel whether they had discussed the charge and consequences of pleading guilty, whether she felt that Acker understood the advice she had been given, and whether she believed that Acker was entering her plea of guilty "knowingly, freely, understandingly and voluntarily." Her counsel answered each question affirmatively. Acker received a sentence of ten years in the custody of the State Department of Corrections and was placed in the RID program. The trial judge clearly stated that when Acker completed the RID program she would be sent to a restitution center where she would remain until restitution, fines, and court costs were paid. The trial judge also explained to Acker that if she failed to finish the RID program she would have to serve a sentence of ten years in the Mississippi Department of

Corrections.

¶4. The sentencing order was filed the same day showing Acker's sentence and containing the following relevant provisions:

> If the defendant should fail to successfully complete the Regimented Inmate Discipline Program, the Commissioner of the Mississippi Department of Corrections may without further orders of this Court place the defendant in the general population to complete said sentence.

> If the defendant successfully completes the Regimented Inmate Discipline Program, the Commissioner of the Mississippi Department of Corrections without further orders of this Court shall release the defendant. The defendant shall report to the probation officer of said County on the next business day following his/her release and shall be on supervised probation for the remainder of the original sentence or until the Court shall alter, extend, terminate or direct the execution of the above sentence.

¶5. After almost three months of participation in RID, Acker requested that she be removed from the program. Acker's signed and witnessed document stated the following:

> I, Crystal Acker MDOC# T-5234 do not want to participate in the Regimented Inmate Discipline Program. This is my decision alone. I have not been coerced or forced to make this decision. I feel this will be in my best interest to flatten my sentence in general population at the Central Mississippi Correctional Facility.

¶6. This document, and a letter from Diane Robbins, the director of "Rankin Satellite/Restitution/RID", were sent to the trial judge. Director Robbins's letter stated the following:

> This is to inform you that Ms. Christie Acker T5234 has been removed from the RID Program at her request. Ms Acker made the request because of her inability to participate in the structured activity of the program. She feels the program will not benefit her and request that she be returned to do the ten (10) years given to her. Did indicate that her time will be wasted as well as the staff because she would refuse to participate. Therefore, it would be her best interest to be returned to Central Mississippi Correctional Facility. She also feels that she is not in good physical condition to participate in the strenuous physical exercises that is required.

> Ms Ackers (sic) has made this decision of her own freewill and has not been forced or coherced (sic) into making this decision. Ms Acker has been transferred back to Central Mississippi Correctional Facility and placed in general population. I have attached a statement made and signed by Ms Acker.

¶7. Acker's signed statement and the accompanying letter by Director Robbins provide the first direct mention of any possible physical problems that Acker had. The only previous hint of physical problems can be seen in the transcript of the proceedings when Acker entered her plea of guilty. Acker at that time asked that she be allowed to remain out of jail to recover from a medical procedure that she had recently undergone. The trial judge, after explaining to Acker the terms of her sentence, denied her request and explained, "when you are out of jail, you get in trouble, young lady." "That's just the fact of it." The record does not indicate the seriousness of this medical procedure or whether it could have hindered her ability to participate in RID.

¶8. Acker's request to be removed from RID was accepted, and she was transferred to Central Mississippi

Correctional Facility and placed in the general population to serve her sentence. After six (6) months in general population, Acker filed a motion styled Defendant's Motion for Resentencing or Reduction of Sentence. In this motion Acker alleged that she was unable to successfully complete the RID program and withdrew; that there were extenuating circumstances including claims that she suffers from a diabetic or near diabetic condition which made her unable to perform the physical activities required by the program; and that she suffers from mild mental retardation which prevented her from fully understanding the expectations of the program and the consequences of her inability to complete it. She asserted generally that she "suffers from various mental disorders" which also affected her judgment.

¶9. The motion concluded with a request that the court reduce the length of her sentence or grant her some consideration. A few weeks later a hearing on the motion was held, from which there is no record. One month after this hearing, the circuit court entered an order stating that Acker's "motion is not well taken and is, therefore, denied." This appeal is based on the denial of this motion.

## DISCUSSION

### I. WAS IT ERRONEOUS FOR THE LOWER COURT TO DENY ACKER'S MOTION FOR RE-SENTENCING IN VIEW OF HER PHYSICAL AND MENTAL HEALTH?

¶10. We review the grant or denial of motions for resentencing under an abuse of discretion standard. *Wallace v. State*, 607 So.2d 1184, 1191 (Miss. 1992). Due to the absence of a transcript of Acker's hearing, which apparently occurred on September 1, 1999, it is impossible to determine whether there was any abuse of discretion on the part of the trial judge when he later denied the motion. The trial court properly considered Acker's motion on its face, and without a hearing transcript we cannot say that the trial court reached an improper result.

¶11. Acker bases her appeal on the assertions that she did not have adequate mental capacity at the time of her plea of guilty to fully understand the ramifications of her sentence and that she has a physical condition which prevents her from participating in the RID program. Counsel for Acker proposes that Acker may have slight mental retardation which affected her judgment at sentencing and when she decided to remove herself from the RID program. No suggestion is made that her guilty plea was defective due to any lack of mental capacity.

¶12. Acker relies on *Presley v. State*, 474 So.2d 612, 620 (Miss. 1985), in the hope of showing that this Court should remand to the circuit court so that Acker's medical and mental health history can be considered to insure that a just and proper sentence is imposed. This Court has stated that "the trial court must consider all the facets, background and record in a sentencing hearing in order that a just and proper sentence may be imposed." *Id*. at 620. In *Presley*, this Court remanded to the trial court for resentencing to allow Presley's counsel to present mitigating circumstances even though the trial judge had given the Presley and his counsel opportunity to present mitigating evidence. *Id*. However, *Presley* must be distinguished from the present case. There, the appellant, who had stolen a few steaks from a super market was, due to his prior convictions, sentenced to forty years incarceration without the possibility of parole or probation as a habitual offender. The Court, while reaffirming the principle that sentencing within statutory limits lies within the sound discretion of the trial court, was confronted with the question of whether, under the circumstances, the sentence was so cruel and unusual as to be violative of the Eighth Amendment to the United States Constitution. Finding that the sentencing hearing was not adequate for the purposes of a proportionality review and a determination of the basic constitutional question, the Court remanded *Presley*

for a new sentencing hearing.

¶13. Here, Acker was sentenced to ten years, with the benefit of the RID program. Likewise, there has been no challenge to the validity of the sentence itself, and there is no indication that Acker, represented by counsel was prevented from offering evidence, either at sentencing or on the hearing of her Motion for Resentencing or Reduction of Sentence as to her medical condition or other extenuating circumstances.

¶14. In accordance with the Uniform Circuit and County Court Rules, a presentence investigation is at the discretion of the trial court judge. The rule states in part:

> RULE 11.02 PRESENTENCE INVESTIGATION AND REPORT
>
> Upon acceptance of a plea of guilty, or upon a finding of guilt, and where the court has discretion as to the sentence to be imposed, the court may direct that a presentence investigation and report be made. The report of the presentence investigation may contain, but is not limited to, the following information:......financial condition,...educational background,....present employment status and capabilities,....social history,.....physical and mental examination...

U.R.C.C.C. 11.02.

¶15. Acker believes that if an investigation into the areas mentioned above had occurred, any evidence regarding Acker's medical problems and mental limitations could have been-recognized by the trial court judge before he imposed the sentence. Under Rule 11.02, pre-sentencing reports lie within the discretion of the trial court, and the judge cannot here be found to have abused that discretion.

¶16. Acker also refers to *Dillon v. State*, 641 So.2d 1223 (Miss. 1994), where this Court remanded a pro se appeal to the trial court to allow it to supplement the record and clarify the issues. She points to the lack of transcript from the hearing on the motion, and argues that the absence of explanation in the lower court's order denying the motion, would require the Court to take a "blind guess" at material facts on which this case turns and asks that this Court remand this cause to the lower court for resentencing.. In *Dillon*, however, the appellant sought review of a post-conviction proceeding where the record did not even indicate for what he was convicted, nor the ruling by the trial court on his original post-conviction motion. This Court remanded in order for the trial court to augment the existing record-not, as Acker seeks, a new hearing.

¶17. The record in this case does not demonstrate that the trial court committed any error in denying Acker's motion to resentence. There is no hearing transcript, and therefore no basis to support Acker's claim that the trial court erroneously denied her motion. Because of this fact, the presumption that the judgment of the trial court was correct must prevail.

¶18. Extensive case law recognizes this presumption of correctness. In *Branch v. State*, 347 So.2d 957, 958 (Miss. 1977) this Court stated that "[t]here is a presumption that the judgment of the trial court is correct and the burden is on the Appellant to demonstrate some reversible error to this Court." This Court has stated:

> Our law is clear that an appellant must present to us a record sufficient to show the occurrence of the error he asserts and also that the matter was properly presented to the trial court and timely preserved. *Moawad v. State*, 531 So.2d 632, 635 (Miss. 1988); *Williams v. State*, 522 So.2d

201, 209 (Miss. 1988).

*Lambert v. State*, 574 So.2d 573, 577 (Miss. 1990).

¶19. In *Peterson v. State*, 518 So.2d 632, 638 (Miss.1987), this Court reiterated:

> We have stated many times that it is the duty of the appellant to present a record of trial which is sufficient to support his assignments of error. *Winters v. State*, 473 So.2d 452, 457 (Miss.1985). *Kelly v. State*, 463 So.2d 1070, 1073 (Miss. 1985). *Dorrough v. State*, 437 So.2d 35, 37 (Miss. 1983).

This Court has also explained:

> We have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief, however sincere counsel may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them.

*Mason v. State*, 440 So.2d 318, 319 (Miss.1983). *Accord, Wallace v. State*, 607 So.2d 1184, 1189 (Miss. 1992) (assertions in the brief without support in the record are without merit); *Williams v. State*, 522 So.2d 201, 209 (Miss. 1988) ("[T]he appellant bears the burden of presenting a record which is sufficient to undergird his assignments of error.").

¶20. Acker's inability to provide a record of the motion hearing is fatal to her claim. This Court cannot overturn the circuit court's ruling based on the record presented. This issue is without merit.

### II. IS A FUNDAMENTAL RIGHT OF THE ACKER'S BEING AFFECTED, PROPERLY PLACING THIS ISSUE BEFORE THE COURT EVEN WITHOUT A TRANSCRIPT OF THE HEARING ON THE MOTION FOR RESENTENCING?

¶21. Acker claims that because her fundamental rights are at stake this Court should look past the fact that there is no hearing transcript in the record and review the issue of Acker's physical and mental health as set forth in her brief. She identifies no specific fundamental right which was lost, and she concedes that her appeal would have been more efficient if there was a record of the arguments and evidence from the motion hearing. She urges in her brief that the absence of any record of the hearing is excused since her former attorney agreed with the State that no court reporter would be required, speculating that counsel for both sides thought that the motion would be granted. No evidence of either an agreement nor the reason for it is offered.

¶22. This Court has consistently held that it will not address issues based on assertions in the briefs and that it "will not consider matters which do not appear in the record and must confine itself to what actually does appear in the record." *Medina v. State*, 688 So.2d 727, 732 (Miss. 1996) (citing *Robinson v. State*, 662 So.2d 1100, 1104 (Miss. 1995), and *Ross v. State*, 603 So.2d 857, 861 (Miss. 1992)). Acker feels that this procedural bar should not apply in the present case because a fundamental right is at stake. This Court has stated, "it has been established that where fundamental rights are violated, procedural rules give way to prevent a miscarriage of justice." *Gray v. State*, 549 So.2d 1316, 1321 (Miss. 1989) (citing *House v. State*, 445 So.2d 815, 820 (Miss. 1984)).

¶23. Acker maintains that her fundamental rights outweigh the requirement to procedurally bar her from presenting mitigating circumstances and evidence not part of the record. She asserts that she is not at fault for there not being a transcript of the hearing, that the evidence of her physical and mental problems were not made known to the trial court at the time of sentencing because of her mental deficiencies, and that she was not able to mention these physical and mental problems at the motion hearing because she was not present.

¶24. She relies on *Gallion v. State*, 469 So.2d 1247, 1249 (Miss. 1985), where this Court held that "an exception to the rule that questions not raised in the trial court cannot be raised for the first time on appeal exists where errors at trial affect fundamental rights." (citing *Brooks v. State*, 46 So.2d 97 (Miss. 1950)). Acker also points to *Willie v. State*, 585 So.2d 660, 666 (Miss. 1991) where this Court applied the exception where an appellant did not raise an argument in his motion to suppress at the pretrial hearing or at trial.

¶25. Acker is asking this Court to ignore well-established rules governing matters which are properly before an appellate court without even identifying the fundamental supposedly being violated. She was sentenced within statutory limits, was represented by counsel when the plea was entered and at the hearing on her motion, and nothing in the record indicates that she was in any way prevented from presenting evidence. The thoroughness with which the trial judge interrogated Acker at the time of her plea also serves as significant evidence of her competence and the voluntary and intelligent nature of her plea and goes against Acker's assertion that she was less than mentally sound. It should be noted once again that Acker has not challenged the voluntariness of her guilty plea nor made a claim of ineffective assistance of counsel.

¶26. This issue is also, without merit.

## CONCLUSION

¶27. Acker, having found that, after entering her guilty plea and receiving a sentence with benefit of the RID program, she was either not willing or able to conform to the requirements of the program, voluntarily removed herself from the program. She sought re-sentencing in the trial court asserting in only general terms that she was not capable of understanding the full import of her sentence, and she was given the opportunity, with the assistance of her attorney, to offer evidence supporting her position. She either chose not to or failed to preserve that evidence for review. Now, she asks this Court to reverse the trial court's denial of her motion for resentencing, relying only on assertions in her brief. This the Court cannot do, and the judgment of the trial court is affirmed.

¶28. **CONVICTION OF UTTERING A FORGERY AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AND PAYMENT OF COURT COSTS IN THE AMOUNT OF $348.00, RESTITUTION IN THE AMOUNT OF $2,558.05, $350.00 TO ITAWAMBA COUNTY FOR ATTORNEY FEES AND ALL OTHER COSTS AFFIRMED.**

**BANKS, P.J., SMITH, MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY.**

1. The State questions whether Acker has the authority to appeal her sentence because she entered a plea of guilty at trial. This Court has stated that a defendant who pleads guilty can appeal from the sentence

imposed. ***Trotter v. State***, 554 So.2d 313 (Miss. 1989); *see also* ***[Campbell v. State](#)***, 743 So.2d 1050 (Miss. Ct. App. 1999). This Court has proper jurisdiction to consider this appeal. Therefore, the motion to dismiss is denied.